This morning, third case, United States v. Burns. Let's turn the angles. May it please the Court, Russell Mangus v. Burns. We are here today because the government charged John Burns with one crime, obtained his conviction on that crime, but then argued for and obtained a sentence for a far more serious, far greater crime. As a result, the trial court sentenced Mr. Burns to almost six years longer in prison and ordered $3.3 million more in restitution than the guidelines mandated for the crime of his conviction. John Burns was an employee of a company called USA Retirement. His employers, as it turned out, Francois Dermot and Robert Probilsky, were operating a Ponzi scheme. The government did not charge John Burns with participating in that Ponzi scheme or having any knowledge of that Ponzi scheme. There is not a single shred of evidence from trial that John Burns knew of the Ponzi scheme. Rather, the government made the strategic choice to charge John Burns with a more limited set of misrepresentations than he made to investors during his sales pitch. To be clear, the government took the far easier route at trial of proving only the more limited set of misrepresentations and of not having to establish that John Burns' conduct caused the investors' losses. The government repeatedly made clear throughout the trial that John Burns' knowledge or lack of knowledge of the Ponzi scheme was irrelevant to the crimes he was charged with. Before, during, and after the trial, the government did two critical things. The first thing is the government offered not a single bit of evidence that John Burns knew there was a Ponzi scheme. Second, when John Burns sought to affirmatively offer evidence that he was unaware of the Ponzi scheme, that he believed the investments he was selling or his employer was offering were legitimate, the government objected, filed a motion eliminating, and it successfully moved to prevent John Burns from offering and from arguing that he understood the investments to be legitimate, that there was no Ponzi scheme, that he was unaware of a Ponzi scheme. Yet when it came time for sentencing, the government did 180 degree about-face. It advocated for and obtained a sentence that would only have been appropriate if John Burns had participated in the Ponzi scheme. The Supreme Court has addressed this very situation. It was in the context of a restitution holding but addressed sentencing as well. And I'd like to quote that quote from the opinion, Huey v. United States says, quote, if a prosecutor chooses to charge fewer than the maximum number of possible crimes, the potential recovery of victims of a crime is undoubtedly limited. And so, too, is the potential sentence that may be imposed on the defendant. Well, that's true for restitution, right, because it's limited to the offense of conviction, right? That's correct, Your Honor. But not to the guidelines or loss amounts under the guidelines. That's different, right? The restitution calculation and the guideline sentence calculation are different, although both are required to meet the proximate cause standard in order to apply them. That's correct, Your Honor. Well, foreseeability, I thought, was the standard for the guideline loss calculation. That's correct, Your Honor. In order to apply the guideline loss, the guideline sentencing enhancement for victim loss, the court needs to find by a preponderance of evidence at trial that the defendant caused the loss to the victim. Or at sentencing for guidelines, right? Because you're just not limited for guideline purposes to the offenses of conviction. In this case, Your Honor, it doesn't matter.  Just the same victims. Same victims, okay. The government in the trial court here did to Mr. Burns at sentencing what the law does not allow. It charged him, convicted him of the lesser crime, but sentenced him for the greater crime. Without justice from this court, John Burns will spend an additional six years in prison. Mr. Mangus, if I understand your argument, though, in essence, he was convicted of having deceived those customers into putting, what, some $3 million-plus of investments into the Ponzi scheme, correct? $3.3 million. $3.3 million. And so he's, as it comes to us, he's lied to them to con them into making these investments without the government being required to prove that he knew they were going to lose them as part of the Ponzi scheme. Nevertheless, he did lie to them to cause the investment. I guess I'm not, I don't see the disconnect here. Since, in essence, what we've got is a wrong for these victims that was carried out by several people. So, Your Honor, where the distinction there is, as we discussed under the sentencing guidelines, the trial court is required to find that the defendant caused the victims' losses. And as the case resolved. Oh, so they would not have made the investment? Correct. And that, Your Honor, is but for causation. And it's one of the two types of causation that the court must find. And certainly, we would concede, if Burns made material misrepresentations to the investors, then those misrepresentations would have been a but-for cause of the loss, or a cause-in-fact of the loss. It's really a two-step analysis that needs to occur. John Burns misrepresented facts to the investors. The investors invested money based on those misrepresentations. So, at that point, the money came out of the investors' pocket and into the USA retirement accounts. Were the arguments that you're making, I was looking for objections by defense counsel at sentencing on these issues. So, there are two objections on the record. The first is in the context of forfeiture and restitution. The second is in the context of sentencing. You asked about sentencing, so I'll address that one first. But when the district court sought to apply the $3.3 million victim loss calculation at sentencing, John Burns' counsel, Ms. Lopez, argued that because Burns played a minor role at USA retirement, in other words, was not culpable. What I remembered was her saying, raising a question. I don't remember an objection, but maybe you can guide me to the right place. So, it's sentencing. I'm talking about the sentencing transcript, page 53, line 23 through page 54, line 3. That was when the victim loss enhancement came up in the context of sentencing. And she made an argument that because he was not culpable for the larger conduct, the Ponzi scheme, that his responsibility for the ultimate loss was relatively small. Yeah, that was just baffling to me. Well, I would agree with you on the objection. She was working off the $30 million plus losses of the entire Ponzi scheme. I agree with you on that her reasoning is hard to decipher. The law requires only the objection be made, not that it be made perfectly. Well, it has to be coherent for the judge to have to respond to it. For the life of me, I'm trying to figure out how we would explain to Judge Koukouris what he did wrong here, under your theory, in responding to objections or issues presented by a party who actually raised a lot of mitigation arguments and other issues at the time of sentencing. Well, Your Honor, to answer the first question first, what he did wrong was not find on the record that John Burns had proximately caused the investor's losses. And part of that finding would be that those losses, the conduct of his employers, Dermaz and Probilsky, were reasonably foreseeable to John Burns. That finding is not on the record, nor is there any evidence in the record, which would have supported such a finding. What about Judge Koukouris, at least as I understood it, was making the decision to hold him accountable here based on circumstantial evidence. In essence, if this was such a great, legitimate investment, why were you lying to customers about it to get them to invest by claiming to have invested yourself and claiming a degree of expertise that he did not hold? Why is that an unfair inference? Well, Your Honor, if that were the inference, then that would read foreseeability out of the sentencing guidelines. In other words, if you didn't believe in the larger fraud, if you didn't know about the larger fraud, you wouldn't have lied about the smaller fraud in the first place. That would completely read foreseeability out of the sentencing guidelines. How so? I think it's just like a case that Your Honor authored called Donninko. In that case, the defendants were a husband and wife. They lied on a HUD financing statement, agreed with the buyer to give the buyer a kickback. They didn't disclose that information on the HUD financing statement. That was a fraud. Now, it turns out that the buyer they were dealing with was himself a fraudster and was obtaining a loan under a fictitious identity and, in fact, committing a much bigger fraud. He absconded with the entirety of the proceeds from Countrywide Financial. And the government's argument in that case was that, well, if they committed the smaller fraud, you can infer that they must be involved in the larger fraud. And this Court disagreed with that. I'll quote the language. It's from page 770 of the Donninko opinion. Just because the defendants were involved in a fraudulent scheme does not necessarily mean it was reasonably foreseeable that all the subsequent economic damages would occur, especially when there was no evidence they knew they were selling the house to what turned out to be a fictional buyer. There's a second quote from Donninko on page 776 through 777, which is what I was referring to about reading foreseeability out of the guidelines. And that is the government in that case had argued that knowledge of that initial fraud could be or knowledge of the larger fraud could be inferred because the defendants had committed the other, the smaller fraud on Countrywide. And this Court said, quote, we reject that argument because it reads any reasonable foreseeability analysis out of the sentencing guidelines. If the government was correct, practically every defendant convicted in every fraud case could be held responsible for every resulting loss, foreseeable or not. And that's this case, Your Honor. In this case, John Burns lied to investors to get their money. There is no evidence on the record that he knew his employers were then taking the further step of stealing that money. And, in fact, John Burns attempted on at least two occasions to offer evidence that he was unaware of the Ponzi scheme. The government objected, and Judge Kokora sustained the objection and told John Burns, we're not going to hear your evidence. We're not going to hear that you're doing this in good faith because it's not relevant. If you're going to save a little time, you better do it now. To conclude there, the argument is simply you cannot at trial, when the government offers no evidence that the Ponzi scheme was reasonably foreseeable, and when, in fact, John Burns is prohibited from offering evidence in his own defense that he did not know the Ponzi scheme, you can't then sentence him as if he had known and participated in the Ponzi scheme. I'll reserve the rest of my time for rebuttal. Thank you, Your Honors. Thank you. Mr. Fulton. Good morning. May it please the Court. Mr. Burns was convicted and held responsible at trial and sentencing only for his own conduct. He was not charged with some lesser crime and held responsible for the larger Ponzi scheme. He was convicted for his part in lying to investors to get them to invest some $3.3 million with USA Retirement. That was the amount that he was sentenced for. The Ponzi scheme overall was responsible for an order of magnitude of loss, greater than $3.3 million, over $30 million. And Mr. Burns was not sentenced for the $30 million loss figure. He was sentenced for the $3.3 million loss figure. He was sentenced on that figure, that loss amount, as an actual loss, by agreement with defense counsel. There was explicit agreement, at least twice in the record, that Burns agreed to that loss figure. The probation office, the PSR, noted that that was the loss figure that the government was asking for and noted that there was no objection by the defense. At sentencing, the district court reviewed the PSR, the guidelines calculations with all the parties and noted there was no objection by the defense. And, in fact, there was no objection by the defense. Mr. Burns agreed to that amount as a loss figure. The reason he agreed that that was, and thus he waived any contention that it was an incorrect loss figure. So there was an agreement. It was explicit. It was on the record. And it was for a strategic reason. There was good reason to waive any objection to the loss figure. Number one, it was the more limited figure that was restricted to the losses that Burns himself caused, not the $30 million loss figure caused by others in the Ponzi scheme, the $3.3 million figure that he himself was involved in. That's number one. Number two, that was the actual loss suffered by the investors. And number three, the strategic reason for agreeing to that loss figure was Burns's strategy at sentencing was basically to, it was consistent with his position at trial, which was to portray himself as somewhat of an innocent dupe who thought that these were good investments and it was taken by surprise but it all went bad. And that he was going to do his best to make good the losses by the investors and pay restitution and ask the district court for a lower sentence as a result. So he was basically giving up a non-meritorious objection to the loss figure in an attempt to portray himself as a, or to parlay his willingness to pay the investors back in return for a lower sentence. It didn't work. The district court emphatically rejected Burns's claim that he was an innocent dupe, that he was naive about the whole thing. And as Judge Hamilton pointed out, concluded from all the evidence in the case and drawing the inferences from the evidence, that Burns must have known what was going on. He must have had suspicions about what was going on. And he went forward in the face of those suspicions and became the best salesman of this Ponzi scheme. That amounted to a finding, if one was needed in the face of the waiver by the defense, that amounted to a finding that these losses were in fact foreseeable to Mr. Burns. I will note that there was evidence that Burns was, explicit evidence from a colleague, a former colleague of Burns that, who Burns tried to sell on the investments, his name was Gus Dahle, that Dahle had told him, this sounds too good to be true. And Burns repeated the lie to him that, no, this is a great investment, my family is involved, has money in it, and became, Burns became agitated and upset when Dahle told him that this investment in Turkish Euro bonds at a high rate of interest sounded too good to be true. So the district court in fact cited that testimony in concluding that Burns was far from an innocent dupe. He must have known, he must have had suspicions, and he went ahead anyway and caused $3.3 million in loss. A counsel this morning didn't really focus on it, but his first argument in his brief, he mentioned it this morning, was trying to cast some doubt on whether the misrepresentations by Burns were in fact material. There was, I think it's overwhelming evidence that the lies that Burns told to these potential investors was in fact material, were in fact material. They were, and the jury properly convicted him of fraud in telling those misrepresentations. Those were misrepresentations that were capable, the jury was properly instructed to find these material. They had to find that they were the type of misrepresentations that were capable of influencing the investors' decisions. Obviously they were the type capable, and in fact they did influence investors' decisions. And I submit that that's exactly why Burns told those lies. He was in essence, by telling these lies, vouching for the safety and quality of the investments he was trying to sell. That's fraud. You can't falsely represent facts in an effort to get people to give you money. That's exactly what he did. So I think he was properly convicted of the fraud. The good faith is a non-issue because even if he believed that these were the greatest investments ever, he's not permitted to lie about them. He's not permitted to tell falsehoods to get people to give him money. So the materiality, the jury properly convicted him. There was more than sufficient evidence. Lost him out. He waived that objection, and the district court did not plainly err in concluding he was responsible for the amount that he was personally involved in obtaining from the investors. And restitution, again, Burns waived any objection to that and agreed to repay it. It was part of the strategic reason for that agreement was in an effort to obtain a lower prison sentence. He agreed, I'm going to pay it back. Judge, please have mercy on me. What did he receive as restitution? He received a below range sentence of 84 months. The district court found that the guideline range for this offense and the loss was I believe started at 108 months on the low end. Burns' sentence was at 84 months, or that's two years, 24 months below the low end. Mr. Fullerton, as I understand it, we've got three related financial questions here. Loss amount under the guidelines, restitution under the statute, and forfeiture. Right. They're governed by different standards. On the forfeiture, how do we go from, how do we get beyond the defendant's own compensation to the higher $3.3 million amount? Right. Well, there's two provisions of the forfeiture statute. One is if you're, I think it's 981A2A and 981A2B. The A2A is the one in which if the offense involved the selling of illegal goods, then proceeds are defined as property obtained directly or indirectly as the result of the commission of the offense, and there's no kind of offsets for expenditures or costs or whatever. 981A2B says proceeds are defined as the money acquired through illegal transactions resulting in forfeiture, less direct costs. And under either provision, the A2A, the property obtained, is the $3.3 million. And, by the way, the statute does not say obtained by the defendant. It says obtained as a result of the commission of the offense. A2B, money acquired through illegal transactions, again, is $3.3 million. Mr. Burns, again, waived any objection to the forfeiture amount, explicitly agreed that it was appropriate, and the district court's conclusion that under either A2A or A2B, the proper forfeiture amount would be $3.3 million was not plain error. Mr. Burns did not offer at sentencing any kind of objection that, wait a second, the only property I acquired was my salary. He had agreed to the forfeiture amount. He agreed with $220,000? No, he agreed at sentencing that the forfeiture amount was $3.3 million. His concern at sentencing about forfeiture was, am I going to have to repay this all myself or do I have some type of claim for contribution against Francois Dermaz? Well, he actually only made $220,000, right? His salary was $220,000. I'm not aware if the record shows whether he has made any payments towards forfeiture or restitution. But that's how the district court arrived at the $3.3 million figure. So for all these reasons, if the court has any questions, obviously I'd be happy to answer them. But for all these reasons, we ask that the court affirm Burns' conviction and sentence. Thank you. Thank you, counsel. How much time? You have two minutes in rebuttal. Your Honor, I'd like to start with what I believe is a red herring here. The government came up and said, well, the whole Ponzi scheme was $30 million. The amount lost by investors that Burns personally solicited was $3 million, and so we're done. We're not done. The $3 million is not the end of the analysis. It's the beginning, and the law still requires the court to find that Burns approximately caused the $3 million. In other words, it was reasonably foreseeable that his employers would steal the $3 million. That didn't happen. As to the finding on the record by Judge Koukouris, Judge Koukouris did not make an explicit finding on the record that the loss was reasonably foreseeable. He wasn't asked to, was he? I believe he was. As I said earlier, there are two objections on the record. My point would be that his musing that, boy, you had to have known at some time or you had to have become suspicious is not a clear and explicit factual finding, and we're over. I understand. Okay. You mentioned the one objection having to do with the $30 million at pages, I think, 52 and 53. What was the other one? The other objection where you think this was raised before Judge Koukouris? It's the same objection, Your Honor. She says he's not responsible for the whole $3.3 million. I don't know where she gets to the number, but she says he should be responsible for at most $300,000 and some thousand because he was not involved in the Ponzi scheme. It's a poor articulation of causation and of lack of foreseeability of the Ponzi scheme, but nonetheless she objected, and that's all the law requires. To find a waiver in that instance? She objected, but you said she didn't mention that it was his employment contract, though, right? I'm sorry, Your Honor. I was addressing the sentencing argument, not the forfeiture argument. Oh, I'm sorry. Just to be clear, there is no evidence in the record that the Ponzi scheme was reasonably foreseeable to Burns. I'd like to direct the Court to a couple of places in the record. At the Short Appendix 164 and Short Appendix 166, the government admits that the defendant is not alleged to have knowingly participated in the Ponzi scheme that happened at USA Retirement. Furthermore, at Short Appendix 148 and 164, the government argues in its motion in limine to exclude John Burns' good faith evidence that he was not aware of the Ponzi scheme, that such evidence was irrelevant. Your Honors, I submit it is not supported by the law to exclude evidence that would exculpate him from such a sentence and to sentence him anyway. I see that I'm out of time, Your Honors. We ask today that this Court vacate John Burns' sentence, restitution, and forfeiture orders. And although we haven't discussed it today, I'll overturn his conviction because his misstatements to investors were not material. Thank you, Your Honors. Thank you, Counsel. Thanks to both Counsel. The case is taken under advice.